**Dated: February 8, 2021**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GINA M. WHITE, | ) | Case No. 20-12251-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ANNA ARVEL WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 20-01061-SAH |
| | ) | |
| GINA M. WHITE, | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GINA M. WHITE'S AMENDED MOTION TO DISMISS PURSUANT TO BANKRUPTCY RULE 7012 AND FED. R. CIV. P. 12(b)(6) AND <u>NOTICE OF OPPORTUNITY FOR HEARING [DOC. 15]</u>**

The following are before the Court for consideration:

1. Second Amended Adversary Complaint [Doc. 12], filed on November 25, 2020 (the "Amended Complaint"), by plaintiff Anna ArVel White by and through her Power of Attorney Edward L. White ("Plaintiff");

2. Defendant Gina M. White's, Amended Motion to Dismiss Pursuant to Bankruptcy Rule 7012 and Fed. R. Civ. P. 12(b)(6) and Notice of Opportunity for Hearing [Doc. 15], filed on December 17, 2020 (the "Motion"), by defendant Gina M. White ("Defendant"); and

3. Plaintiff's Response to Defendant's Amended Motion to Dismiss [Doc. 20], filed on January 14, 2021 (the "Response"), by Plaintiff.

### Background

Defendant is the former daughter-in-law of Plaintiff, having divorced Plaintiff's son ("Son") in 2007. Plaintiff's Son is an attorney and not only represents Plaintiff in this adversary proceeding but also holds Plaintiff's power of attorney. This dispute arises from a $50,000 loan made by Plaintiff to Defendant after her divorce from Son, which Defendant failed to repay in full. Defendant filed for chapter 7 bankruptcy protection in July 2020. Plaintiff then filed this adversary proceeding, seeking judgment on the loan debt, declaratory relief that the loan was not validly entered into as Plaintiff lacked the necessary capacity and Defendant exercised undue influence over Plaintiff in obtaining the loan, and a claim for fraudulent inducement, with a final request Defendant's debt to Plaintiff be excepted from discharge or Defendant be denied a discharge. Defendant filed her first motion to dismiss, seeking dismissal of the Amended Complaint for failing to state a claim under 11 U.S.C. § 523(a)(4) and for failing to satisfy the minimum pleading requirements under Fed. R. Civ. P. 9(b) (applicable pursuant to Fed. R. Bankr. P. 7009)**,** which was granted with leave to amend**.**

Plaintiff filed the Amended Complaint containing three causes of action: breach of contract; fraud in the inducement; and declaratory relief. The Amended Complaint, however, also requests the Court except Defendant's obligation to Plaintiff from discharge under Section

523(a) or deny Defendant's discharge under 11 U.S.C. § 727(a). Defendant filed the Motion, once again seeking to dismiss the Amended Complaint.

## Jurisdiction

The Court has jurisdiction to hear the Amended Complaint pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I).

## Standards for Motion to Dismiss

A plaintiff bears the burden to frame a complaint with enough factual matter to suggest that he or she is entitled to relief. Robbins v. Oklahoma ex rel. Okla. Dep't of Human Serv., 519 F.3d 1242, 1247 (10th Cir. 2008). To survive a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, made applicable here pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, "a plaintiff must include in the complaint 'enough facts to state a claim to relief that is plausible on its face.'" Barenburg v. Burton (In re Burton), 2010 WL 3422584, at *2 (10th Cir. 2010) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard requires that factual allegations contained in an adversary complaint be sufficient to raise a right to relief above mere speculation. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also, Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (stating complaint must give the court reason to believe that the plaintiff has a reasonable likelihood of mustering factual support for the claims raised). ***Bare legal conclusions and simple recitations of the elements of a cause of action do not satisfy this standard.*** Twombly, 550 U.S. at 555.

3

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in Twombly, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." Robbins, 519 F.3d at 1247. Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." Robbins, 519 F.3d at 1247 (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Robbins, 519 F.3d at 1247. "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." Robbins, 519 F.3d at 1248. The Tenth Circuit has instructed that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." Robbins, 519 F.3d at 1248.

**Statement of Facts**

The Court must accept the "well-pleaded allegations of the [Amended Complaint] as true and view them in the light most favorable" to Plaintiff. Albers v. Bd. of Cnty. Comm'rs, 771 F.3d 697, 700 (10th Cir. 2014). Accordingly, the ***relevant, non-conclusory***[1] facts are:

---

[1] The Court takes as true all well-pled, as opposed to conclusory, allegations of the Complaint. Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007) (citing Twombly, 550 U.S. at 570)). Additionally, the Court ignores all new fact allegations contained in the Response as the Court must accept only the fact allegations of the Amended Complaint. Earles v. Cleveland, 418 F.Supp.3d 879, 893 (W.D. Okla. 2019) (court disregarded allegations raised for first time in response to a motion to dismiss); Salopek, Trustee for Salopek Family Heritage Trust v. Zurich Am. Life Ins. Co., 428 F.Supp.3d 609, 617 (D. N.M. 2019); In re Qwest Communications Intern., Inc., 396 F.Supp.2d 1178, 1203 (D. Colo. 2004).

4

1. Defendant comes from a wealthy family. Amended Complaint, ¶ 14.

2. Defendant and White were married from September 1990 through September 24, 2007, and had two children. Amended Complaint, ¶ 13.

3. Defendant and Son divorced in 2007. Son was having an extramarital affair, and Defendant disparaged Son to others over the affair. Defendant previously engaged in extramarital affairs during their marriage. Amended Complaint, ¶ 18.

4. Plaintiff is an elderly widow with limited funds from her retirement as a teacher and a couple of small annuities worth less than $250,000. She moved from her longtime home of Hooker, Oklahoma, to Edmond, Oklahoma, in 2014 to be closer to her Son so he could care for her in case medical or other issues arose. But after the move, Plaintiff was isolated, having left her small hometown. The move, her advancing age, and her separation from longtime friends and family enhanced Plaintiff's anxiety, which had long been an issue for her. Defendant knew about Plaintiff's vulnerabilities. Amended Complaint, ¶ 16.

5. Plaintiff was diagnosed with colon cancer in 2015. Her surgery went well, but subsequently the medications she was administered induced pseudo-Parkinson's symptoms (tremors and the like) and led to other complications. Subsequently, her health declined to the point where she was institutionalized twice with mental health issues. To date, Plaintiff struggles with her mental health. Amended Complaint, ¶ 17.

6. Prior to the divorce, Plaintiff said unflattering things about Defendant, and they did not share a close relationship. Quite the opposite, the two were hostile and adversarial to each other. Amended Complaint, ¶ 19.

7. After the divorce, Defendant began drawing closer to Plaintiff to extract a loan from Plaintiff. The closer relationship ultimately led to Defendant obtaining a loan from Plaintiff for $50,000 (the "Loan"). When the Loan was obtained, Plaintiff's mental state had deteriorated – she was noticeably and demonstrably unwell mentally and physically. Amended Complaint, ¶¶ 20-21.[2]

8. Although Defendant told Plaintiff the Loan was a "sacred" obligation in recognition that the Loan was a crucial part of Plaintiff's retirement plan, she only intended to repay the Loan if convenient. Amended Complaint, ¶ 20.

9. When the Loan was made by Plaintiff, Defendant did not advise Son or anyone else in the family about the Loan. Rather, Son found out about the Loan when he discovered the Loan documents after Plaintiff's first mental break and first institutionalization associated therewith. Amended Complaint, ¶ 22.

10. After discovering the Loan documents, Son confronted Defendant about the Loan. Defendant contended Plaintiff wanted to make the Loan as an investment to provide security and income to Plaintiff in her retirement. Amended Complaint, ¶ 23.

11. Plaintiff, or Son, claims Defendant hid the Loan from Son. As a lawyer, Son would have required documentation and security for the Loan. When the Loan was made, Defendant and Son were in regular communication given their shared custody of their two children.

---

[2]Plaintiff includes repeated legal conclusions that Defendant was a "caretaker" of Plaintiff and Plaintiff was a "vulnerable adult" or "incapacitated person" under applicable Oklahoma Statutes, which this Court is not bound to accept as true on a motion to dismiss. Papsan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986).

      Despite this, Defendant never disclosed the Loan to Son nor explored options for security or repayment thereof. Amended Complaint, ¶¶ 24, 27.

12. Defendant's attitude about the Loan was typical of her transactions with her wealthy parents; however, unlike Defendant's parents, Plaintiff needed the funds as a part of her retirement. Amended Complaint, ¶ 24.

13. Defendant only intended to repay the Loan if it was convenient and did not view it as a legal obligation. Based on this intent, Defendant induced Plaintiff, who had a reduced mental state, to make the Loan and gave Plaintiff the impression repayment of the Loan would be part of Plaintiff's retirement income. Plaintiff would have never entered into the Loan but for Defendant's stated intent to repay the Loan with the repayment being part of Plaintiff's retirement income. Amended Complaint, ¶¶ 25 and 26.

14. Defendant filed this bankruptcy on July 2, 2020, as a voluntary chapter 7. Amended Complaint, ¶ 3.

15. Defendant's schedules in the Bankruptcy Case are inaccurate as she fails to note all assets, such as an interest in a family trust worth millions, and her familial relationships, including a possible common law marriage to a long-time live-in partner ("Partner"). Amended Complaint, ¶ 28.

16. Defendant owned a house at 2317 Brixton Road, Edmond, Oklahoma ("Brixton Road House") in her name. She sold the Brixton Road House on August 12, 2019, for $315,000 turning what was likely an exempt residence into non-exempt cash. A little more than a month later, on September 27, 2019, Defendant purchased 1300 Devonshire Court in Edmond, Oklahoma ("Devonshire Court House") for $150,000. The purchase of the

Devonshire Court House was in Defendant's name exclusively. On March 25, 2020, Defendant executed deeds in favor of her Partner, making him a co-owner on the Devonshire Court House. Defendant failed to account for the whereabouts of upwards of $165,000 in cash remaining from the sale of her Brixton Road House in her schedules. Defendant has transferred this and other cash to Partner to hide it from her creditors. Amended Complaint, ¶¶ 29 and 30.

17. Defendant has made and received payments via online payment apps to avoid having income pass through her bank account. Defendant is working as a contractor associated with grocery and/or food delivery. Her income from that contract work is not listed on her statement of current monthly income. Amended Complaint, ¶ 31.

18. Defendant receives regular income and/or gifts from her family, which are not reported on her schedules. Amended Complaint, ¶ 32.

19. At the time of her bankruptcy filing, Defendant owed Plaintiff $41,959.48 effective as of December 1, 2020, plus interest at the per diem rate of $5.80, attorney fees and costs under the Loan. Amended Complaint, ¶ 36.

## Legal Conclusions

The Court fears Plaintiff's counsel believes the mere length of a complaint eliminates concerns over whether a complaint plausibly states a claim in a coherent manner. However,

> Under Rule 8, the complaint should contain "a short and plain statement of the claim" – "plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted," and "short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it. Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). When a complaint falls short of these requirements, it is "not the district court's job to stitch

together cognizable claims for relief from [a] wholly deficient pleading[.] Mann v. Boatright, 477 F.3d 1140, 1148 (10th Cir. 2007).

Carbajal v. City and Cnty. of Denver, 502 F. App'x 715, 716 (10th Cir. 2012). Notwithstanding prior direction from this Court, the Amended Complaint continues to remain a lengthy dissertation of facts with little connection, if any, to viable claims before this Court. While the Court could perhaps piece together possible claims, such is neither the Court's role nor Defendant's burden. Rather, Defendant is entitled to have any claims against her be intelligibly stated so she is informed of the legal claims being asserted and the factual basis therefor. Carbajal, 502 F. App'x at 716 (citing Mann v. Boatright, 477 F.3d 1140, 1148 (10th Cir. 2007)).

**I.   THE AMENDED COMPLAINT FAILS TO SATISFY THE MINIMAL PLEADING STANDARDS MUCH LESS THE HEIGHTENED PLEADING STANDARDS FOR FRAUD.**

The Amended Complaint is poorly drafted and ill conceived. The Amended Complaint sets out 11 U.S.C. §§ 523(a)(2)(A), (4) and (6), and 727(a)(2)(A) in paragraphs 7 and 8. But with the exception of paragraph 12 which generically refers to Section 523(a) and paragraph 30 which discusses the facts relevant to Plaintiff's Section 727(a)(2)(A) claim, the Amended Complaint contains no cause of action under either Section. Instead, the Amended Complaint contains the following three causes of action:

> **First Cause of Action** – **labeled breach of contract** (judgment on the Note)
>
> **Second Cause of Action** – **labeled fraud in inducement** (contains legal argument regarding and allegations of fraud but no request for relief related thereto while nonsensically stating it seeks declaratory relief regarding Plaintiff's ability to validly enter into the Loan)

9

>**Third Cause of Action** – **labeled declaratory relief** (seeks declaratory relief that the Note was not validly entered into by Plaintiff due to lack of capacity or undue influence)

To add more confusion, the final paragraph of the Amended Complaint, which seems to be part of the Third Cause of Action but likely is the prayer for relief (at least in part), asks the Court to except Defendant's debt to Plaintiff from discharge or deny Defendant her discharge.

The Court can easily dispense with the First Cause of Action for breach of contract and the Third Cause of Action, which are not addressed by the Motion. The Court finds the First and Third Causes of Action plausibly state a claim; however, Plaintiff is directed to identify in any third amended complaint filed the specific relief requested in the Third Cause of Action. The remaining claims, however, are attacked by the Motion and merit lengthier analysis.

The Court previously chastised Plaintiff because a complaint should not take the form of "shotgun pleading" whereby the plaintiff pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors, placing too great of a burden on the defendant and the Court. Goode v. Nuance Commc'n, Inc., 2018 WL 3371091, at *6 (N.D. Okla. 2018) (quoting Greenway Nutrients, Inc. v. Blackburn, 33 F. Supp. 3d 1224, 1242-43 (D. Colo. 2014)). See also Williams v. Berryhill, 2018 WL 2234902, at *2 n.17 (D. Utah 2018); Cook v. Baca, 2011 WL 13157059, at *3 n.1 (D. N.M. 2011). Notwithstanding this prior critique and explanation, Plaintiff's Amended Complaint again is nothing but a shotgun pleading, requiring Defendant and the Court to parse through the fact allegations and determine how to pair the fact allegations with the specific claims made. The Amended Complaint contains a total of 33 numbered paragraphs before setting forth three causes of action, each of which fully

incorporates the prior numbered paragraphs. Amended Complaint, pp. 11-13. Six of the 33 paragraphs are recitations of law and not factual in any respect.

Adding insult to injury, the Second Cause of Action is a tangle of facts and legal argument apparently encompassing not one, but four separate claims. Plaintiff seeks to except the Loan from discharge under Section 523(a)(2), (4), and (6) and to deny Defendant's discharge under Section 727(a)(2)(A). However, the claims under each provision of the Bankruptcy Code are arguably[3] lumped together in the Second Cause of Action even though no specific request for an exception from, or denial of, discharge is contained therein, much less identified by section. But the relief available under Section 523 and Section 727 differs dramatically, and the basis for relief under each subsection of Section 523(a) also differs. Rule 10(b), Fed. R. Civ. P. (applicable pursuant to Rule 7010, Fed. R. Bankr. P.) requires each claim to be stated in a separate count. Smith v. Smith (In re Smith), 489 B.R. 875, 903 (Bankr. M.D. Ga. 2013) ("[C]omplaints should not be a jigsaw puzzle where it is up to the reader to determine which allegations support which causes of action. Separate counts would promote clarity, and the plaintiff should appropriately organize a future amended complaint.").

The Amended Complaint remains "a hodgepodge of broad accusations of wrongdoing and factual allegations and causes of action with little relevance to" claims either under Section

---

[3] The Court uses the word arguably because the Second Cause of Action while containing allegations of fraud states that it seeks declaratory relief rather than a judgment excepting a debt from discharge or a judgment denying Defendant her discharge. This is but just another example of Plaintiff's counsel's poor drafting and apparent refusal to follow the Court's prior direction. This is inexcusable because it has caused the Court to spend unnecessary time trying to piece the puzzle of Plaintiff's claims together, something which the Amended Complaint should have done.

11

523 or 727.  Ingram v. Nelson (In re Nelson), 2014 WL 1347031, at *5 (Bankr. D. Utah 2014).  Plaintiff makes no effort to connect the Amended Complaint's multiple collective fact allegations to the elements of each of her *separate* claims for relief under Section 523(a)(2), (4) and (6) and Section 727(a)(2)(A), unnecessarily leaving Defendant and the Court to decipher Plaintiff's jumble of facts, law, and claims.  This type of shotgun pleading contravenes Rule 8's notice pleading standard.  Hart v. Salois, 605 F. App'x 694, 701 (10th Cir. 2015).  A complaint that fails to separate causes of action or claims for relief into separate counts is a "shotgun" pleading violating Rule 10(b), Fed. R. Civ. P.  Mayo v. Jackson (In re Jackson), 2020 WL 7634502, at *4 (Bankr. E.D. Ky. 2020); Elliott v. Piazza (In re Piazza), 2019 WL 1084203, at *5 (Bankr. M.D. Pa. 2019) ("Separate claims for non-dischargeability should be pled in separate counts.").

Accordingly, since the Amended Complaint fails to identify the specific facts which support each claim stated under Section 523(a) and 727(a) and further fails to include separate counts for each cause of action or ground of relief sought thereunder, the Amended Complaint once again does not satisfy Rules 8 and 10 and must be dismissed.  Plaintiff is granted leave to file a third, *and final*, Amended Complaint within 14 days after entry of this Order.

While this ruling could and should be the end, the Court will address the specific arguments made by Defendant in the Motion so as to hopefully avoid another motion to dismiss when Plaintiff files an third amended complaint.  Plaintiff should take heed because she will **not** be given leave to file any further amended complaints in her efforts to satisfy the pleading standards.

## II. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 523(a)(2)(A).

Plaintiff attempts to assert a claim under Section 523(a)(2)(A), which excepts from discharge debts obtained by false pretenses, a false representation, or actual fraud. As previously discussed in the Dismissal Order, complaints asserting claims based on fraud must meet a heightened pleading standard under Rule 9(b), Fed. R. Bankr. P. (applicable by Fed. R. Bankr. P. 7009), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Once again, the Amended Complaint fails to satisfy the standards of Rule 9(b) by failing to identify the "who, what, when and where" allegations of the alleged fraud. Parkway Bank & Trust v. Casali (In re Casali), 517 B.R. 835, 841 (Bankr. N.D. Ill. 2014) (citing DiLeo v. Ernst & Young, 901 F.2d 624, 626 (7th Cir. 1990)). While the "who" and "what" can be determined with some work due to the boilerplate pleading used by Plaintiff, the Amended Complaint fails to identify "when" and "where" the alleged misrepresentations, omissions, and/or fraud occurred.[4]

Accordingly, the Amended Complaint does not plead fraud with sufficient specificity, and the Motion must be granted and the Section 523(a)(2)(A) claim is DISMISSED without prejudice. Plaintiff is granted leave to file a third amended complaint within 14 days after entry

---

[4]The intent element of fraud claims may, however, be alleged generally. Bankers Healthcare Group, LLC v. Moss (In re Moss), 598 B.R. 508, 512 (Bankr. N.D. Ga. 2019) (citing In re Eden, 584 B.R. 795, 803 (Bankr. N.D. Ga. 2018)). Because plaintiffs rarely know the inner workings of a debtor's mind, Rule 9(b) only requires that a complaint stating a claim under Section 523(a)(2)(A) plead intent generally from which the debtor and the court can draw inferences. Barber v. Taylor (In re Taylor), 2018 WL 6584774, at *3 (Bankr. S.D. Ga. 2018).

of this Order. Plaintiff is directed, in accordance with Part I above, to plead as a separate count and to separately state the underlying fact allegations for each request for relief made under each subsection of Section 523(a) and Section 727(a).

**III. THE AMENDED COMPLAINT FAILS TO STATE A SECTION 523(a)(4) CLAIM BASED ON BREACH OF FIDUCIARY DUTY.[5]**

The Amended Complaint seeks relief under Section 523(a)(4) but never identifies facts giving rise to a fiduciary relationship. Similarly, the Response fails to address the specific arguments raised by Defendant in the Motion regarding Plaintiff's Section 523(a)(4) claim. Plaintiff's chaotic manner of pleading proves to be the demise of her Section 523(a)(4) claim.

Pursuant to Section 523(a)(4), a debtor's discharge does not apply to debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To state a claim under Section 523(a)(4) for fraud while acting in a fiduciary capacity, "a plaintiff must allege that: (1) a fiduciary relationship existed between the debtor and the creditor, and (2) the debt owed to the creditor is attributable to a fraud or defalcation committed by the debtor in the course of the fiduciary relationship." Burton, 2010 WL 3422584, at *5.

Federal law determines the existence of a fiduciary relationship for purposes of Section 523(a)(4); however, state law is relevant to the inquiry. Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1371 (10th Cir. 1996). This exception to discharge is a narrow one, and in the Tenth Circuit, an express or technical trust is required for a fiduciary relationship, and neither a

---

[5]The Response is much like the Amended Complaint, it throws facts and law into sections allegedly addressing arguments made by Defendant but which have absolutely nothing to do with such arguments. This form of pleading and drafting papers filed with the Court creates more work for the Court with less than exemplary results for Plaintiff.

general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties, will give rise to a claim under Section 523(a)(4).  Young, 91 F.3d at 1371-72. Additionally, the trust creating the fiduciary capacity must have been expressly established or imposed prior to the alleged tortious action that created the debt.  Young, 91 F.3d at 1372.  "'A mere contractual relationship is less than what is required to establish the existence of a fiduciary relationship.'"  Pino v. Jensen (In re Jensen), 2019 WL 2403105, at *9 (10th Cir. BAP 2019) (citing Zio Johnos, Inc. v. Ziadeh (In re Ziadeh), 284 B.R. 893, 899 (Bankr. N.D. Iowa 2002)).

The Amended Complaint is void of any mention of an express trust between Plaintiff and Defendant; it is similarly void of any mention of a technical, or statutory, trust.  While the Amended Complaint references no statutory provision giving rise to a technical trust, the Response references an Oklahoma criminal statute, Okla. Stat. tit. 21, § 843.1 (Caretakers – Abuse, financial neglect, neglect, sexual abuse or exploitation of charge) and Okla. Stat. tit. 43A § 10-103 (definitions for the Protective Services for Vulnerable Adults Act).  Neither of these statutes in any form or fashion gives rise to a technical trust between Plaintiff and Defendant.  And the Amended Complaint does not attempt to explain how these statutes create a technical or statutory trust either.[6]

Accordingly, the Amended Complaint fails to state a claim for nondischargeability of debts pursuant to Section 523(a)(4).  Therefore, Plaintiff's claim under Section 523(a)(4) is

---

[6]The Response indicates Plaintiff relies on fraud or defalcation while Defendant was acting in a fiduciary capacity as her basis for relief under Section 523(a)(4). Response, p. 13. Accordingly, as Plaintiff neither pleads nor argues in the Response larceny or embezzlement as a basis for relief under Section 523(a)(4), the Court will not delve into such claims.

hereby DISMISSED, without prejudice, and with leave to amend. However, Plaintiff is directed, in accordance with Part I above, to plead as a separate count and to separately state the underlying fact allegations for each request for relief made under each subsection of Section 523(a) and Section 727(a).

### IV. A PLAUSIBLE CLAIM IS STATED UNDER SECTION 523(A)(6).

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." To prevail under Section 523(a)(6), a creditor must prove both a willful act *and* a malicious injury. Panalis v. Moore (In re Moore), 357 F.3d 1125, 1129 (10th Cir. 2004). Thus, an intentional tort is required, and debts resulting from recklessness or negligence are not within the scope of Section 523(a)(6). Burton, 2010 WL 3422584, at *6 (citing Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998)). The Tenth Circuit applies a subjective standard in determining whether a debtor desired to cause injury or believed the injury was substantially certain to occur. Utah Behavior Serv. Inc. v. Bringhurst (In re Bringhurst), 569 B.R. 814, 823 (Bankr. D. Utah 2017) (citing Via Christi Regional Med. Ctr. v. Englehart (In re Englehart), 229 F.3d 1163 (10th Cir. 2000) (holding the willful and malicious injury exception focuses on the debtor's state of mind)).

For an injury to be willful, there must be a deliberate or intentional injury, not merely a deliberate or intentional action leading to an injury. First Am. Title Ins. Co. v. Smith (In re Smith), 618 B.R. 901, 912 (citing Kawaauhau, 523 U.S. at 61). This description generally encompasses intentional torts, which require the actor intend the consequences of his act and not simply the act itself. Smith, 618 B.R. at 912 (citing Kawaauhau, 523 U.S. at 61-62). "A willful

16

injury may be established by direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or by indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur." Smith, 618 B.R. at 912 (citing Mitsubishi Motors Credit of Am. v. Longley (In re Longley), 235 B.R. 651, 657 (10th Cir. BAP 1999)). It is a subjective standard. Smith, 618 B.R. at 912. For an injury to be malicious, "'evidence of the debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present.'" Smith, 618 B.R. at 919 (citing Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek), 983 F.2d 1524, 1527 (10th Cir. 1993)).

The Amended Complaint sets forth sufficient facts from which intent to cause harm to Plaintiff (and her Son) and malicious intent is plausible. Specifically, Defendant and Son had a contentious relationship, and Defendant and Plaintiff similarly had a contentious relationship. Defendant could have obtained a loan from her wealthy parents but chose to obtain the Loan from Plaintiff and then hid the Loan from Son. And, finally, Defendant did not intend to treat the Loan as a serious obligation. From these facts, it can be inferred Defendant sought out the Loan from her former mother-in-law without an intent to repay for the purpose of harming Plaintiff financially and taking revenge on Son.

Accordingly, the Amended Complaint states a plausible claim for relief under Section 523(a)(6), and the Motion will be denied as to the Section 523(a)(6) claim. However, Plaintiff is directed, in accordance with Part I above, to plead as a separate count and to separately state the

underlying fact allegations for each request for relief made under each subsection of Section 523(a) and Section 727(a).

**V.     THE AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM UNDER SECTION 727(a)(2)(A).**

A debtor's discharge may be denied under Section 727(a)(2)(A) when the "debtor, with intent to hinder, delay or defraud a creditor" has (or has permitted to be) "transferred, removed, destroyed, mutilated or concealed – property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). "To deny a discharge under Section 727(a)(2), the debtor must have the *actual* intent to defraud creditors." Marine Midland Bus. Loans, Inc. v. Carey (In re Carey), 938 F.2d 1073, 1077 (10th Cir.1991). Because rare is the occasion when a party lays bare his or her subjective intent, "[f]raudulent intent . . . may be established by circumstantial evidence, or by inferences drawn from a course of conduct." Mathai v. Warren (In re Warren), 512 F.3d 1241, 1249 (10th Cir. 2008) (quoting Farmers Coop. Ass'n of Talmage, Kan. v. Strunk, 671 F.2d 391, 395 (10th Cir.1982)).

With some corralling of facts and supposition of a request for relief under Section 727(a)(2)(A), the Amended Complaint plausibly states a claim thereunder. The Amended Complaint makes reference to a sale of the Brixton Road House in August 2019, the purchase of the Devonshire Court House in September 2019, and deeds in March 2020 to Defendant's Partner making him a co-owner of the Devonshire Court House. The Amended Complaint further identifies $165,000 in cash sale proceeds from the Brixton Road House that are unaccounted for by Defendant. Additionally, the Amended Complaint references an undisclosed interest in a family trust, income, and family gifts – although such are poorly identified.

Though Plaintiff has plausibly stated a claim under Section 727(a)(2)(A), she has done so just barely.  Plaintiff is thus directed to adequately identify in any third amended complaint (i) the act(s) complained of and the timing thereof being done at a time subsequent to one year before the date of the filing of the petition (2) with intent to hinder, delay or defraud Plaintiff, other creditors, or trustee (3) by Defendant (4) that transferred, removed, destroyed or concealed any of Defendant's property, or permitting any of these acts to be done.  Geyer & Assoc. CPA's, P.C. v. Stewart (In re Stewart), 421 B.R. 603, 2009 WL 3724977, at *2 (10th Cir. BAP 2009).

Accordingly, the Amended Complaint states a plausible claim for relief under Section 727(a)(2)(A) claim, and the Motion will be DENIED as to the Section 727(a)(2)(A) claim. However, Plaintiff is directed, in accordance with Part I above, to plead as a separate count and to separately state the underlying fact allegations for each request for relief made under each subsection of Section 523(a) and Section 727(a).

## Conclusion

For the reasons set forth above, the Motion is GRANTED in part and DENIED in part. Plaintiff is granted fourteen (14) days from entry of this Order to file a third amended complaint compliant with the terms of this Order.  Plaintiff will be granted no further leave to file any further amended complaint.

IT IS SO ORDERED.

# # #